We further find that there is no evidence tending to show that the administrator of the loan corporation had any knowledge of any arrangements through which the home owners were to be liable for the $165.18 now involved in the present action.

We also find that the burden would be upon the plaintiff to present evidence of such knowledge in view of the agreement to accept Home Owners' Loan Corporation bonds in full settlement.

The judgment of the Common Pleas Court will be affirmed and costs adjudged against the plaintiff.

*Judgment affirmed.*

HORNBECK, P. J., and GEIGER, J., concur.

BICKLEY, APPELLEE, *v.* SEARS, ROEBUCK & CO., APPELLANT.

(Decided October 17, 1938.)

*Mr. John F. McCrystal* and *Mr. John F. McCrystal, Jr.,* for appellee.

*Messrs. Holliday, Grossman & McAfee* and *Messrs. Krueger, Rosino, Moyer & Moore,* for appellant.

CARPENTER, J. The defendant, Sears, Roebuck & Company, operates a retail store in Sandusky for the

sale of a variety of merchandise. In the late afternoon of July 21, 1936, but before time for the store to close, the plaintiff, Ruth E. Bickley, a married woman thirty-four years old, entered the store to look at some merchandise with a view to making a purchase. A clerk directed her to go down an aisle between two counters, to see the desired article. While walking as directed, she slipped on the wooden floor and fell, sustaining some injuries, and for the damage resulting from them she brought this action alleging in substance in her petition the foregoing facts and others. The verdict and judgment were for her for $6,500. The matter is before this court on defendant's appeal on questions of law.

Various errors are assigned by the defendant:

1. The answer is a general denial of negligence and of damages, and contains the further immaterial and irrelevant allegation that the plaintiff's injuries, "if any there be * * * were due solely and proximately to the negligence of the plaintiff." This did not plead or raise the issue of contributory negligence. *Cincinnati Street Ry. Co.* v. *Adams,* 33 Ohio App., 311, 316, 169 N. E., 480; *Glass* v. *William Heffron Co.,* 86 Ohio St., 70, 74, 98 N. E., 923; *Rayland Coal Co.* v. *McFadden, Admr.,* 90 Ohio St., 183, 192, 107 N. E., 330. This court has expressed its views on this and the similar immaterial allegation that the injury was caused by a third person. *Leopold* v. *Williams,* 54 Ohio App., 540, 546, 8 N. E. (2d), 476.

If the issue of contributory negligence was in the case as it went to the jury, it was because the evidence raised it. The trial court must have concluded that it was so raised by the defendant's evidence, for he charged the jury upon that subject, and said:

"The burden of proof as to contributory negligence is upon the defendant, and the defendant must prove contributory negligence by a preponderance of the evidence."

At the conclusion of the charge, counsel for defendant stated orally to the court:

"The defendant requests the court to instruct the jury upon the question that should the plaintiff's evidence raise a presumption of negligence, then the plaintiff will be required to counterbalance or rebut such inference before she is entitled to recover."

This request was refused. Was the refusal prejudicial error?

While the language used was not very accurate and might not be a proper instruction if tendered in that form before argument, it was sufficiently definite to call the court's attention to the general proposition stated, and was a request for further instruction on it. If the plaintiff's evidence raised an inference of negligence on her part that contributed to cause her injury, this request called attention to the burden of the plaintiff by her evidence to counterbalance such inference, and the failure of the court to grant the request was error. Therefore, the question is one of fact: Did the plaintiff's evidence raise such inference?

The only evidence offered directly by the plaintiff as to how she fell, was her own testimony which was in substance that as she walked down the aisle she did not notice anything on the floor, but after she had fallen she saw "perhaps a teacup of a preparation that looks like very fine sawdust with a—it isn't dry like sawdust normally is, it is sticky or oily—moist, and that was on the floor at the place I had fallen. Where my heel had slid into it, it left a black mark on the floor, or a very dark mark on the floor."

She said her dress was dusty and stained from this, and that she looked down the aisle as she walked, but did not notice the dust scattered through the aisle on the floor until after she had fallen.

In *J. C. Penny Co., Inc.*, v. *Robison*, 128 Ohio St., 626, 193 N. E., 401, 100 A. L. R., 705, paragraph one of the syllabus, the court said:

"A storekeeper owes to a customer, shopping in his store, the duty to exercise ordinary care to have and keep his storeroom in a reasonably safe condition."

Such customer may assume that this duty is being performed until in some way warned to the contrary. The customer who enters a store looking at the merchandise that is displayed to attract his attention and interest is not expected or bound to look minutely at the floor for dust upon it unless somebody or something warns him to do so. From the plaintiff's evidence there was nothing so warning her, and it can hardly be said that her evidence raised an inference of negligence on her part.

Whatever evidence of contributory negligence there was, came in the defendant's evidence, especially from the testimony of the porter who said he had started his evening sweeping of the store when plaintiff entered and was at that time sweeping in the next aisle from where plaintiff claims to have fallen. The trial court gave the defendant the benefit of the doubt and sub-mitted to the jury the question of contributory negli-gence, but from its refusal to give the additional instruction quoted above, it properly concluded that plaintiff's evidence did not raise an inference of negli-gence on her part.

2. The answer put in issue the question of damages. Before argument, the plaintiff requested and the court gave, over defendant's objection, an instruction on the measure of damages. It started as follows:

"In the event that your verdict be for the plaintiff in determining the amount of damages you would award her, you may take into consideration," etc.

Defendant assigns this as error and contends that it assumes damage was sustained by plaintiff.

As was contemplated by the initial clause of this instruction, under the general charge which was later given to the jury, the verdict could not have been for the plaintiff unless it found that she fell and that neg-

ligence of the defendant proximately caused her fall. If the jury so found, plaintiff was entitled to at least nominal damages for the fall thus caused. It is not complained that the instruction did not properly state the measure of damages if liability of the defendant and some damage was established.

3. Two specific complaints are made concerning the evidence:

a. The plaintiff testified that as she walked down the aisle the clerk who had told her where to go followed her and, "immediately" after she had fallen, "I asked this salesman what was on the floor, and his answer was that it was sweeping compound, and I asked him, what was it doing on the floor at that time of day, and his answer was that they wanted to get the sweeping done before closing time so that the boy who did the sweeping or the porter in the store wouldn't be forced to work overtime." Objection to this was overruled. Plaintiff claims this was a part of the *res gestae,* and that is the only basis on which the court could have admitted it at the time it was offered. Whether it was then properly admitted, became immaterial when in the defendant's evidence the store porter testified to the same effect as the salesman's statement, viz., that he had started his evening sweeping at five o'clock, and had placed on the floor near each counter at the head of each aisle a small quantity of a green sweeping compound known as "Dust Down," but he said that none of it was as far down the aisle as Mrs. Bickley was when she claims to have fallen.

b. Another claimed error in evidence was that the court refused to permit the store manager to testify concerning an experiment he performed the next day by putting some of the sweeping compound on the store floor and trying to slip on it himself. From the few facts surrounding the experiment as offered by the defendant and shown in the record and their dissimilarity to the situation shown by plaintiff's evidence,

the court did not abuse its discretion in ruling out this evidence. Many dissimilarities no doubt occurred to the court, among them: The witness knew what he was doing or trying to do; the plaintiff was not aware of her peril; his weight may have been much different than hers; his shoe, especially the heel, was quite different from that of a woman's shoe, and it does not appear whether the heel of his shoe was of the same material as that of the plaintiff, or whether new or worn.

4. Refusal to grant motions to direct a verdict seasonably presented by the defendant and the overruling of a motion for a new trial on the ground that the verdict was manifestly against the weight of the evidence both on the issue of liability and the amount of the damages awarded, are assigned as errors. The evidence being in conflict on all issues, a jury question was presented, and this court cannot say the jury's verdict was against the weight of the evidence.

Finding no prejudicial error in the record, the judgment of the trial court is affirmed.

*Judgment affirmed.*

LLOYD and OVERMYER, JJ., concur.